# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# Urbana Division

| | |
|---|---|
| **ALEX M. SHELEFONTIUK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 08-2172 |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **sued as Michael J. Astrue,** ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In December 2007, Administrative Law Judge (hereinafter "ALJ") E. James Gildea denied supplemental security income benefits to Plaintiff Alex Shelefontiuk. The ALJ based his decision on findings that although Plaintiff's severe impairments precluded him from performing his past relevant work, Plaintiff was able to perform the requirements of other jobs that exist in significant numbers in the economy.

In July 2008, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Commissioner of the Social Security Administration denying benefits. In January 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#10), and in March 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#13). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#10)** be **GRANTED**.

### I. Background
### A. Procedural Background

Plaintiff first applied for benefits in February 2005, alleging an onset date of October 24, 2004. His application was denied initially in June 2005, and again upon reconsideration in September 2005. Plaintiff appealed, and the ALJ held a hearing in December 2007, at which Plaintiff testified. Attorney David Tuggle represented Plaintiff at the hearing. Bonnie Gladden,

a vocational expert (hereinafter "VE"), also testified. In December 2007, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act, and denied his application for benefits. Plaintiff filed a request for review of the hearing decision, which the Appeals Council denied in May 2008, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently appealed the decision to this Court under 42 U.S.C. § 405(g).

### B. Plaintiff's Medical Background

Plaintiff's brief described his relevant medical background in sufficient detail. The Court need not repeat it here.

### C. Background and Hearing Before the ALJ

At the hearing, Plaintiff testified that he was born on June 6, 1961, making him 43 years old at the onset of his alleged disability, and 46 years old at the time of the hearing and decision. (R. 298.) Plaintiff testified that he was six feet tall and weighed at least 230 pounds. (R. 299.) He is a high school graduate. (R. 301.) Plaintiff has been living alone in his daughter's camping trailer at a camping club for about five or six years. (R. 299.) He has not had a driver's license since it was revoked or suspended ten years before. (R. 300.) He last worked for four or five years until 1998 doing subcontracted construction work on porches and interiors. (R. 301.)

Plaintiff receives medical treatment at Aunt Martha's Youth Service Center, a clinic in Danville, Illinois. He testified that he has gone there occasionally for the last ten or twelve years, and that he had gone to the clinic steadily for the five or six years preceding that. (R. 302.) Plaintiff received treatment at the clinic for back pain; in addition, he was referred to other doctors for treatment for back pain, depression, blood pressure, and heart issues. (R. 302.) He explained that his back pain began after he sustained an injury. After the injury, he had two surgeries on his back and received spinal injections from 1984 until approximately 2005; he eventually stopped getting the injections because he could not afford to pay for them. (R. 303.) The only treatment he currently has for the pain is taking Vicodin or Vicoprofen. One of these medications causes him heartburn, but the other does not work as well. (R. 314.) He also takes

Amitriptyline and occasionally a sleeping pill, both to help him sleep. (R. 303.) Plaintiff later testified that the Amitriptyline was for depression. He stated that his medications caused side effects including sleepiness, poor coordination, poor attention span, and poor memory. (R. 314-15.) Plaintiff also takes blood pressure medicine. (R. 306.)

Plaintiff testified that his pain is constant and runs down his right side from just above his hip through his leg. (R. 304.) Approximately twice a week, he loses all feeling in the right side of his body, which causes him to fall. (R. 305.) This condition necessitates his using a cane to support himself. (R. 305.) Plaintiff testified that sometimes the pain spreads from his right side across his entire lower back and into his left leg. (R. 306.) Because of his condition, he cannot lie in one spot for very long, so he wakes up two or three times each night even when he has taken his medication. (R. 306.) Plaintiff has undergone several MRIs related to his pain, and these tests have shown some problems. (R. 305.) Plaintiff broke his left leg and shattered his left ankle in an accident in 1988. As a result, since 1990, his ankle has been swelling and causing him pain. (R. 306.) Plaintiff also testified that he is depressed nearly every day, and that when he is depressed he does not like to be around people because the people he knows criticize his inactivity, which gets on his nerves. (R. 307-08.)

Plaintiff goes to town twice a month, and goes to the clinic about every three months. (R. 308.) He sees a handful of people per week at the camping club, but he does not necessarily talk to the people he sees. (R. 309.) Plaintiff testified that he had not drunk alcohol in over a year, and even then he drank infrequently. (R. 309.) Plaintiff sleeps from about 10:30 or 11:00 p.m. to 10:30 or 11:00 a.m., but he is able to sleep only 10 of those 12 hours. (R. 309, 310.) Plaintiff testified to daily activities including watching television, reading magazines, microwaving canned food for his meals when his pain is not too severe, wandering around, straightening up his camper, napping in the afternoon, and occasionally getting a ride to a nearby market to buy food. (R. 310-12.) Plaintiff testified that he also sits outside in a lawn chair for hours, but he has to get up every 10 or 20 minutes to move around or to lie down. (R. 310-11, 317.) Plaintiff testified that he walks to an outhouse which is 30 or 40 yards away from his camper to use the restroom, but when his pain is very severe, he must use a bucket in his camper

to relieve himself. (R. 310, 317.) On these days, it is difficult for him to get out of bed and he must drag his leg to walk. (R. 317.) Plaintiff has these bad days on average twice a week and this average has been increasing. (R. 317-18.) Plaintiff testified to some difficulty with dressing and with bathing, which he only does every few days. (R. 318.)

VE Bonnie Gladden testified that Plaintiff's past relevant work was classified as heavy exertional level and semi-skilled in nature. She testified that Plaintiff's work as a machine operator was light, unskilled work. (R. 320.) The ALJ then questioned the VE about a hypothetical individual with the same education and experience as the claimant, and the RFC to perform light work, limited to simple, unskilled tasks with occasional balancing, stooping, kneeling, crouching, or crawling, but no climbing ladders, ropes, or scaffolds, and no more than occasional climbing of ramps and stairs. (R. 320-21.) The VE stated that such an individual could perform Plaintiff's past job as a machine operator. The ALJ later noted that Plaintiff last worked as a machine operation in 1989, more than fifteen years ago, therefore, the job does not qualify as past relevant work. The VE also testified that the hypothetical individual could perform the tasks of a packing and filling machine operator (10,000 jobs), janitor (41,000 jobs), stock and order filler (8,500 jobs), and hand packager (13,300 jobs). The VE testified that if these positions were limited to the sedentary level, there would still be 1,300 stock and order filler jobs, and 1,000 packaging jobs. (R. 321.) The individual could also perform sedentary jobs including cashier (7,000 jobs), and assembly work (7,100 jobs). (R. 322.) These jobs could be performed with a sit/stand option at 30-minute intervals and the sit/stand option could be at will as long as 95 percent productivity was maintained. (R. 322.) The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (hereinafter "DOT"). (R. 322.) The VE then testified that these positions would not allow for unscheduled breaks, and that a worker could not lie down during work except during scheduled breaks. (R. 323.) Finally, the VE testified that missing two or more days per month would affect job retention, and changing the postural limitations from "occasionally" to ten percent of the time would interfere with the ability to perform these jobs. (R. 323.)

4

## D. The ALJ's Decision

To be entitled to supplemental income benefits, a claimant must show that he is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 416(i)(1). The disability determination involves a five-step sequential evaluation. 20 C.F.R. § 416.920. The Commissioner determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. 20 C.F.R. § 404.920(b)-(d), (f)-(g). Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. §§ 416.920(e), 416.945. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset date of his alleged disability. At the second step, the ALJ found that Plaintiff has severe impairments, those being discogenic and degenerative disorders of the spine, obesity, a reported history of ankle surgery with residual pain and swelling, depressive disorder, personality disorder, and pain disorder. At the third step, the ALJ determined that Plaintiff's conditions do not meet or medically equal any of the impairments listed in the Regulations. The ALJ then determined that Plaintiff has the RFC to do light or sedentary work that is simple and unskilled in nature and requires no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. Based upon this RFC, at step four, the ALJ found that Plaintiff was not able to perform his past relevant work. However, at step five, based on the RFC determination, the VE's testimony, and

5

Plaintiff's age and education, the ALJ concluded that Plaintiff is able to perform other jobs that exist in the national economy. As a result, the ALJ ruled that Plaintiff was not disabled and, therefore, was not eligible for supplemental income benefits.

## II. Standard of Review

The Social Security Act authorizes judicial review of the Commissioner's final decision, and states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are "patently wrong." *Urban v. Sullivan*, 799 F. Supp. 908, 912 (C.D. Ill. 1992) (quoting *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989)). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III. Analysis

Plaintiff argues that the Court should grant summary judgment in his favor or remand this case for the following reasons: (1) the ALJ erred by failing to incorporate all of Plaintiff's limitations into the RFC assessment and then finding that Plaintiff was capable of light work; (2) the ALJ's credibility determination was vague, unsupported, and erroneous; and (3) the ALJ's hypothetical questions to the VE were incomplete and his step five finding was erroneous and unsupported.

### A. The ALJ's RFC Assessment

Plaintiff argues that the ALJ's RFC assessment is improper for several reasons: (1) the ALJ did not give Dr. Holloy's opinions adequate weight; (2) the ALJ erred by relying on

Dr. Brister's opinions; (3) the ALJ failed to take into account Plaintiff's limits on concentration; (4) the ALJ should have requested medical source statements from Drs. S. Raju and Linda Williams; (5) the ALJ erred by his use of medical records to formulate the RFC; and (6) the ALJ improperly ignored Plaintiff's need to use a cane.

Plaintiff first contends that the ALJ should have given great weight, if not controlling weight, to the opinions of Dr. Holloy, because she is a treating physician who treated Plaintiff at the Vermilion Area Community Health Center. Under the regulations, a treating source is a physician who has an ongoing treatment relationship with a patient, which means that a patient sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. § 416.902. Plaintiff notes that courts defer to treating physicians because they can provide a "detailed, longitudinal picture" of a claimant's condition that is superior to the information that may be learned from single or sporadic examinations. 20 C.F.R. § 416.927(d)(2). However, in Plaintiff's case, the record shows that Dr. Holloy saw Plaintiff only two times and the notes of the second visit are limited to the Lumbar Spine RFC Questionnaire. (R. 225, 245-48.) The rest of Plaintiff's treatment notes from the clinic indicate that he was seen by clinic nurses rather than Dr. Holloy. (R. 224-36.) Plaintiff contends that Dr. Holloy is in charge of the nurses who treat Plaintiff, and thus, the Court should still consider Dr. Holloy to be his treating doctor and Dr. Holloy stated in the spine questionnaire that she has had contact with Plaintiff as a clinic patient every three or four months since 1995. (R. 245.) However, the record indicates that Plaintiff cancelled several appointments and did not visit the clinic from November 1996 through May 2002. (R. 235.) Based on this evidence, although Dr. Holloy may technically be Plaintiff's treating doctor because she is in charge of the nurses, the record does not support the existence of an ongoing treatment relationship that might warrant giving her opinions controlling weight. Accordingly, the Court cannot conclude that the ALJ erred when weighing the significance of Dr. Holloy's opinion.

Plaintiff next contends that the ALJ erred by relying on state agency reviewer Dr. Phyllis Brister's findings rather than the psychological examination performed by Dr. Williams.

7

Contrary to Plaintiff's argument, Dr. Brister did not simply provide an unfounded reinterpretation of Dr. Williams' opinion, but also considered information from claimant's activities of daily living questionnaire, and the daily activities phone interview conducted with claimant's daughter. (R. 218.) Dr. Brister noted such activities as meal preparation, doing laundry, remembering medications, visiting neighbors, and doing woodwork (R. 218); these activities arguably support her opinion that Plaintiff's psychological conditions were not as severe as Dr. Williams opined. Because the court may not "reweigh the evidence or substitute its own judgment for that of the Commissioner," this Court cannot conclude that the ALJ's decision to rely on Dr. Brister's opinion over that of Dr. Williams was error. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Plaintiff also contends that the ALJ failed to account for Plaintiff's difficulties with dealing with coworkers and supervisors and with concentration. As the ALJ noted (R. 24), Dr. Williams diagnosed Plaintiff with depressive disorder, pain disorder associated with both psychological factors and general medical condition, and personality disorder. Dr. Williams also noted that, with regard to work-related activities, Plaintiff could be expected to display diminished pace, disrupted concentration and short-term memory, lack of persistence, irritability, and difficulty relating appropriately to coworkers and supervisors. Dr. Brister acknowledged these diagnoses and her mental RFC assessment indicates that Plaintiff had moderate limitations in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to work with others without being distracted by them. (R. 220.) Based on these limitations, Dr. Brister stated that Plaintiff "retains the cognitive ability to understand, recall and executive simple operations of a routine, repetitive nature" and he can "tolerate occasional social contacts and adapt to routine." (R. 222.) Given this evidence, the ALJ stated as follows:

> The evidence fails to establish any significant problem getting along with others and there is no credible reason to impose any limitation on interaction with others in a work setting. As for concentration, persistence, or pace, it is reasonable to believe that the combination of physical and mental impairments would impact these abilities, but the undersigned finds no credible reason to believe that the claimant could not perform simple unskilled tasks despite his various

8

>   impairments, especially considering the longstanding nature of these problems
>   and his successful performance of unskilled and semi-skilled work for a number
>   of years despite the problems.

(R. 35.) As a result, the ALJ concluded that Plaintiff could perform a limited range of simple, unskilled light or sedentary work. (R. 18, 35, 321.)

Consistent with Dr. Williams' evaluation, Dr. Brister expressly found that Plaintiff had moderate limitations in his ability to work in coordination with or proximity to others without being distracted by them (R. 220), and stated that Plaintiff "can tolerate occasional social contacts," which implies that he has some limitations in social functioning. Nevertheless, the ALJ found no credible reason to impose any limitation on interaction with others in a work setting. Given the agreement of Dr. Williams and Dr. Brister that Plaintiff had difficulties with social functioning, and the absence of any conflicting evidence, the Court concludes that the ALJ erred by stating that there is "no credible reason to impose any limitation on interaction with others in a work setting." (R. 35.) Accordingly, the Court recommends remanding for reconsideration of this issue.

As for the ALJ's treatment of Plaintiff's limitations in concentration, the ALJ limited Plaintiff to simple, unskilled work. He adopted the findings of Dr. Brister, who stated that Plaintiff could understand, recall, and execute simple operations of a routine, repetitive nature, and he also considered Plaintiff's "successful performance of unskilled and semi-skilled work for a number of years." (R. 35.) The Court finds that Dr. Brister's description of the work that Plaintiff could perform supports the ALJ's finding that Plaintiff could perform "simple and unskilled" work. Accordingly, the ALJ adequately took into account Plaintiff's limitations in concentration.

Plaintiff also contends that the ALJ erred by failing to request medical source statements from Drs. Raju and Williams. In support of this argument, Plaintiff relies on 20 C.F.R. § 404.1519n, which states, "[a]lthough we will ordinarily request, as part of the consultative examination process, a medical source statement about what you can still do despite your

impairment(s), the absence of such a statement in a consultative examination report will not make the report incomplete." Thus, the language of the Regulation does not mandate that the ALJ obtain a medical source statement. This is consistent with Seventh Circuit authority: An ALJ must recontact medical sources "only when the evidence received is inadequate to determine whether the claimant is disabled." 20 C.F.R. § 404.1512(e); *see, e.g., Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007) (holding that the ALJ did not err by failing to request a medical source statement because the evidence in that case was adequate to determine whether the claimant is disabled).

While it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much. *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004). In determining whether an ALJ has sufficiently developed the administrative record, courts "accept reasonable assessments by administrative officials about how much evidence is enough." *See Kendrick v. Shalala,* 998 F.2d 455, 457 (7th Cir. 1993) ("[I]t is always possible to do more. How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment."). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994). Here, the ALJ determined that the evidence was adequate for his analysis and acted within his discretion in deciding not to request medical source statement from Drs. Raju and Williams.

Plaintiff also contends that the ALJ erred in several respects by his use of the medical records to formulate an RFC. Specifically, Plaintiff contends that the ALJ erred by not including limitations on grasping, turning, and twisting objects, fine manipulations, and reaching noted by Dr. Holloy in her Lumbar Spine RFC Questionnaire. (R. 247.) Dr. Raju found no limitations in Plaintiff's ability to grasp, turn, twist, or finger, and found only limited right arm abduction up to 90 degrees because of pain. Dr. Raju also specifically noted that Plaintiff has no limitations in work-related activities aside from walking and standing. The Court noted above that the ALJ did not err by failing to give Dr. Holloy's opinions controlling weight. As a result, the ALJ may weigh her opinion along with other medical opinions. In light of this, this Court cannot conclude

that the ALJ erred by failing to accept Dr. Holloy's limitations, especially considering that the previous question asked whether Plaintiff had "*significant limitations* in doing *repetitive* reaching, handling or fingering," and Dr. Holloy answered no. (R. 247, emphasis in original.)

Regarding reaching, Drs. Raju and Nenaber both found that Plaintiff experienced pain when reaching overhead, however, the existence of pain is not itself a limitation. Furthermore, Dr. Raju did not note that Plaintiff's work activities would be limited with regard to his upper extremities. Regarding Plaintiff's ability to push and pull with his lower extremities, the only limitation described by any doctor was the ankle pain Dr. Nenaber noted, potentially making pedal use difficult. (R. 199.) In light of the conflicting evidence regarding Plaintiff's limitations in reaching overhead and using his lower extremities, the Court cannot conclude that the ALJ erred in assessing the evidence.

Plaintiff also contends that the ALJ erred by failing to include Plaintiff's need for a cane in his RFC assessment. For the ALJ to find that Plaintiff's cane was medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p. In rejecting Plaintiff's need for a cane, the ALJ stated that "it is unclear whether a cane . . . is actually medically necessary," because it was not prescribed by a doctor and one of the earliest references to the cane indicated that Plaintiff was using it for a sense of security and safety. (R. 32.) The ALJ also stated that "even if use of the cane was medically necessary for ambulation, it would not preclude gainful work activity." (R. 32.)

According to the record, Dr. Nenaber opined that a *medically-required* hand-held assistive device was *necessary* for ambulation (R. 199), Dr. Raju noted that Plaintiff was independent with ambulation when he used a cane (R. 195), and Dr. Holloy opined that the Plaintiff *must* use a cane or other assistive device while engaging in occasional standing/walking. (R. 248). The ALJ did not cite any evidence that Plaintiff is able to walk without a cane, and Plaintiff has testified about falling. SSR 96-9p only requires that assistive device be medically necessary with documentation; it does not require that the device be prescribed. In light of these

11

medical opinions, this Court cannot find that substantial evidence supports the ALJ's rejection of Plaintiff's need for a cane on the basis that it was not medically necessary or prescribed.

Regarding the ALJ's statement that Plaintiff's need for a cane would not preclude gainful activity, the ALJ found as a part of his RFC that Plaintiff could do light work (much of which involves a significant amount of standing or walking), and specifically found that Plaintiff could stand for six hours during an eight-hour workday. Assuming that Plaintiff could do light work or stand for this amount of time, the ALJ's hypothetical question is insufficient because the need for a cane would limit Plaintiff to working with only one hand or arm any time he was standing or walking. As a result, the Court concludes that the ALJ erred by failing to include Plaintiff's need for a cane in his RFC and hypothetical questions. Accordingly, the Court recommends remand on this basis as well as the error noted above.

### B. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ erred by making a vague and unsupported credibility determination.

In a recent decision, the Seventh Circuit stated that, in reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14.

In addressing Plaintiff's credibility, the ALJ stated as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 22.) Both before and after this statement, the ALJ thoroughly discusses Plaintiff's medical history and the hearing testimony, including a few comments regarding conflicts in Plaintiff's medical records and testimony. Nevertheless, after

carefully reviewing the decision, the Court found no analysis supporting the ALJ's credibility decision beyond the ALJ's assertion that he considered the evidence of record. While the Court does not require that an ALJ's decisions be perfect, "[i]t is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible'." SSR 96-7p. An ALJ must articulate some specific reasoning behind his credibility determination, especially when it is presumably based on objective factors, as in this case. The ALJ's recitation of the medical history does not satisfy this requirement. In the absence of any explanation for his credibility finding, the Court finds that it was patently wrong. Accordingly, the Court recommends that the ALJ be directed to reconsider this issue on remand.

Having recommended remand, the Court need not address Plaintiff's remaining arguments.

### IV. Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#10)** be **GRANTED**. The parties are advised that any objection to the recommendation must be filed in writing with the clerk within ten working days after service of a copy of this Report and Recommendation. *See* 28 U.S.C. 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 21st day of August, 2009.

                                              s/ DAVID G. BERNTHAL
                                              U.S. MAGISTRATE JUDGE